IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LINDA REED | ) |
| | ) |
| v. | ) NO. 3:05-0835 |
| | ) JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE/DAVIDSON CO. | ) |

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No.25). For the reasons stated herein, Defendant's Motion is GRANTED, and this action is DISMISSED.

FACTS

Plaintiff is a female, over the age of forty years, who was, at all relevant times, employed by Defendant Metropolitan Government of Nashville/Davidson County ("Metro") as a police officer. Plaintiff contends that Defendant discriminated against her, based upon her age, gender, and perceived disability, and in retaliation for her exercise of protected activity, all in violation of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 2000e, et seq. ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Tennessee Human Rights Act ("THRA").

Plaintiff began employment as a police officer for Metro in 1981. Between 1981 and the relevant time period, she worked as a patrol officer, in the vice department, in the checks and fraud division as a detective, in the burglary section, in the warrants division, and in the central records division. Docket No. 31, ¶¶ 3-11.

In 2003 and early 2004, while Plaintiff was working as a sergeant in the archives/alarm section of the central records division, Plaintiff's supervisor, Lieutenant Duane Phillips, referred

Plaintiff to the Police Advocacy Support Services ("PASS"), which provides counseling services to police personnel. Docket No. 31, ¶ 22. Phillips made the referral based upon complaints from co-workers and unusual behavior. Id., ¶¶ 16-22. In addition, Phillips made a request to the Chief of Police that Plaintiff undergo a fitness-for-duty evaluation. Id., ¶¶ 24-25.

Plaintiff was ultimately referred for an independent psychological evaluation to Dr. Rosemary Jeffries, a psychologist with Nashville Area Behavioral Consultants. Docket No. 31, ¶ 43. The referral requested that Plaintiff's fitness for duty as a police officer and as a supervisor be evaluated. Id. Dr. Jeffries interviewed Plaintiff and administered eight different psychological tests. Id., ¶ 44. Based upon her interview and Plaintiff's test results, Dr. Jeffries opined that Plaintiff was not capable of handling the daily routine of supervising others or the duties associated with patrol in an effective manner. Id, ¶ 45. Dr. Jeffries further opined that, with continued psychological treatment, Plaintiff could maintain employment with Metro in a structured, low stress environment with limited contact with others. Id. Based upon Dr. Jeffries' recommendation, Defendant temporarily decommissioned Plaintiff on July 20, 2004. Id, ¶ 48.

Plaintiff admits that there is nothing in Dr. Jeffries' report that would preclude Plaintiff from continuing treatment, coming back two months later, and being found capable of being a patrol officer or a supervisor. Docket No. 31, ¶ 46. Instead, Dr. Jeffries' report provided a "snapshot" of Plaintiff's psychological fitness for duty at the time of her evaluation. Id. Indeed, on January 11, 2005, after another evaluation, this time by Dr. Scott Ruder, Plaintiff was reinstated and recommissioned. Id, ¶¶52-55.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## ADEA

Plaintiff may establish an age discrimination claim by presenting direct evidence of discrimination. Rowan v. Lockheed Martin Energy Systems, 360 F.3d 544, 548 (6th Cir. 2004). "Direct evidence" is evidence that proves the existence of a fact without requiring any inferences. Id. Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004). The evidence must establish not only that the employer was predisposed to discriminate on the basis of age, but also that the employer acted on that predisposition. Id. Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination. Best v. Blount Memorial Hospital, 195 F.Supp. 2d 1034, 1041

(E.D. Tenn. 2001). Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination. Id.

Plaintiff alleges that Phillips, her supervisor, once asked her a question about taking her pension and also made two comments about her age. Docket No. 31, ¶¶ 57-58, 60. Plaintiff also contends that Phillips sent her (and others in the department) an e-mail called "The Cat in the Hat on Aging." Id., ¶ 59. The Court finds these isolated comments do not demonstrate a predisposition to discriminate based upon age and are insufficient to establish direct evidence of age discrimination.

Alternatively, in order to establish her claim for age discrimination by presenting circumstantial evidence, Plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position she held; and (4) she was replaced by, or her discharge permitted the retention of, a person who does not belong to the protected class. Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1115 (6th Cir. 2001). If Plaintiff is able to establish a *prima facie* case of age discrimination, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for any adverse employment action. Rowan, 360 F.3d at 547. If Defendant provides a legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to show that the reason given by Defendant was just a pretext for decisions actually motivated by unlawful bias against age. Id. Plaintiff may demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate Defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Best, 195 F.Supp.2d at 1042.

Defendant argues that Plaintiff cannot establish the third and fourth elements of a *prima facie* case, that she was "qualified," under Tennessee law and that she was replaced by a younger person.

4

Plaintiff's response does not address these two elements.[1] She instead argues that a jury could find Defendant's legitimate, nondiscriminatory reason to be pretextual. Docket No. 30, pp. 8-12.

Even assuming that Plaintiff could establish a *prima facie* case, which she cannot because she cannot show that she was replaced by a younger person, Plaintiff's arguments overlook important undisputed facts. Defendant's decision to temporarily decommission Plaintiff was based upon an independent evaluation of Plaintiff's fitness for duty, conducted by Dr. Jeffries, who is not an employee of Defendant or a supervisor of the Plaintiff. Dr. Jeffries' recommendation, ultimately given to Deputy Chief Pike, was based upon Dr. Jeffries' interview with and testing of Plaintiff herself. Plaintiff presented no evidence which contradicts Dr. Jeffries' evaluation of Plaintiff at that time.[2]

Plaintiff has admitted that it is reasonable for a police department to ensure that its officers are psychologically fit for duty. Docket No. 31, ¶ 23. Lt. Phillips' referral of Plaintiff to the counseling service and ultimately for a fitness-for-duty evaluation was based upon his observations of Plaintiff and complaints he received from co-workers. Plaintiff may dispute the factual bases for those complaints, but her disagreement with Phillips' honest business judgment regarding her need for evaluation does not create sufficient evidence of pretext. As long as an employer has an honest belief in its proffered nondiscriminatory reason, the employee cannot establish that the reason was

---

[1] Plaintiff does contend that she was as qualified, if not more qualified, than Garry Baker, the man who replaced her as a supervisor in the Archives Department. Docket No. 37, ¶¶ 24-25. Plaintiff does not allege, however, that Mr. Baker is younger than she is.

[2] Plaintiff has admitted that her own psychologist, Dr. Weinberg, never sent Defendant a letter stating that Plaintiff was fit for duty. Docket No. 31, ¶ 42. Dr. Ruder's evaluation came in January of 2005, six months after Dr. Jeffries' evaluation and recommendation. Id., ¶ 52.

5

pretextual simply because it is ultimately shown to be incorrect. Majewski, 274 F.3d at 1117. Defendant reasonably relied upon the particularized facts before it at the time the decision was made. Id.

In any event, the referral for evaluation alone was not an adverse employment action. The *result* of the referral, the recommendation from Dr. Jeffries, caused Defendant to take an adverse employment action, the temporary decommissioning of Plaintiff; but there is no evidence that Dr. Jeffries' recommendation was based upon Plaintiff's age or was, in any way, not an independent evaluation.

For all these reasons, the Court finds that Plaintiff has not carried her burden of raising a genuine issue of material fact as to whether Defendant decommissioned her because of her age. Defendant's Motion for Summary Judgment on this issue is GRANTED, and Plaintiff's ADEA claim is DISMISSED.

## GENDER DISCRIMINATION

Plaintiff also alleges that Defendant discriminated against her based upon her gender. In order to establish a claim for gender discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from a similarly situated person outside the protected class. Vickers v. Fairfield Medical Center, 453 F.3d 757, 762 (6th Cir. 2006). As with age discrimination, if Plaintiff establishes a *prima facie* case of gender discrimination, the burden of production shifts to Defendant to provide a legitimate, nondiscriminatory reason for its actions. Day v. Krystal Co., 2007 WL 188892 at * 4 (E.D. Tenn. Jan. 24, 2007). If Defendant satisfies this

6

burden, Plaintiff must then prove that Defendant's proffered reason is a pretext for unlawful discrimination. Id.

Plaintiff is a member of a protected class and was subjected to an adverse employment action when she was temporarily decommissioned by Defendant. Plaintiff claims she was replaced by a male, and the parties dispute whether Plaintiff was "qualified." Even assuming Plaintiff could establish a *prima facie* gender discrimination claim, however, she cannot show that Defendant's asserted legitimate, nondiscriminatory reason, that Plaintiff was not psychologically fit for duty, was pretextual.

As explained above, Plaintiff has admitted that it is reasonable for a police department to ensure that its officers are psychologically fit for duty. As noted above, Defendant's decision to temporarily decommission Plaintiff was based upon an independent evaluation of Plaintiff's fitness for duty, conducted by Dr. Jeffries, who is not an employee of Defendant or a supervisor of the Plaintiff. Dr. Jeffries' recommendation, ultimately given to Deputy Chief Pike, was based upon Dr. Jeffries' interview with and testing of Plaintiff herself. Plaintiff has presented no evidence that Dr. Jeffries' recommendation was, in any way, based upon Plaintiff's gender.

For these reasons, the Court finds that Plaintiff has not carried her burden of establishing a gender discrimination claim. Defendant's Motion for Summary Judgment on that claim is GRANTED, and Plaintiff's Title VII gender-based discrimination claim is DISMISSED.

## HOSTILE WORK ENVIRONMENT

Plaintiff has also alleged a hostile work environment claim under Title VII. In order to establish this claim, she must show that (1) she is a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the

7

charged sexual harassment created a hostile work environment; and (5) the existence of employer liability. Vickers, 453 F.3d at 762.

A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Day, 2007 WL 188892 at * 6. The workplace environment must be both objectively and subjectively hostile or abusive, one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so. Id. In determining whether there was a hostile or abusive work environment, the Court must look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with the Plaintiff's work performance. Id.

The evidence presented herein is not severe or pervasive enough to create a hostile work environment. Compare Black v. Zaring Homes, Inc., 104 F.3d 822 (6th Cir. 1997). Although Plaintiff may have found the comment and the e-mails to be inappropriate and unprofessional, the comment was only once and the four e-mails were not directed specifically at the Plaintiff. In addition, neither the e-mails nor the comment involved physically threatening or humiliating conduct, and there is no evidence that they unreasonably interfered with Plaintiff's work performance.

8

The Court finds that Plaintiff has not carried her burden of establishing a hostile work environment claim.[3] Defendant's Motion for Summary Judgment on that claim is GRANTED, and Plaintiff's hostile work environment claim is DISMISSED.

ADA

The Americans with Disabilities Act prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). In order to establish a violation of the ADA, Plaintiff must establish that (1) she has a disability, as defined in the ADA; (2) she was qualified to perform the essential functions of the position, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. McKay v. Toyota Motor Mfg., U.S.A. Inc., 110 F.3d 369, 371 (6th Cir. 1997); Sullivan v. River Valley School Dist., 197 F.3d 804, 810 (6th Cir. 1999).

Under the ADA, a "disability" is defined in three ways: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff alleges that Defendant "regarded" her as having such an impairment. Thus, Plaintiff must show that Defendant regarded her as having a physical or mental impairment that substantially limited one or more of her major life activities.[4]

---

[3] Plaintiff's Response to Defendant's Motion simply recites the law concerning hostile work environment and "quid pro quo" sexual harassment, much of which is irrelevant, without offering support to show that either applies in this case. Docket No. 30, pp. 18-21.

[4] The ADA does not define "major life activities," as that term is used in the definition of "disability." The regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") in connection with the ADA define "major life activities" as the basic activities that the average person can perform with little or no difficulty, such as "walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

9

In Response to Defendant's Motion, Plaintiff merely states: "It is clear from the record that Lt. Phillips and the department believed Reed's psychological distress prevented her from not only being a supervisor but even just a patrolman, hence her decommission." Docket No. 30, p. 13. To be regarded as substantially limited in the major life activity of working, however, one must be regarded as precluded from more than one particular job. Murphy v. United Parcel Service, Inc., 119 S.Ct. 2133, 2138 (1999). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Id.

Plaintiff has failed to show that Defendant regarded her as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training." Murphy, 119 S.Ct. at 2138. In addition, even if Defendant regarded Plaintiff as unable to perform her specific job, even that perception was temporary. Plaintiff returned to work within six months of her decommissioning. Docket No. 31, ¶¶ 48 and 55.

For these reasons, Plaintiff has failed to establish her claim under the ADA. Defendant's Motion for Summary Judgment is GRANTED as to the ADA claim, and that claim is DISMISSED.

RETALIATION

Plaintiff has asserted that Defendant retaliated against her for engaging in protected activity under Title VII. Plaintiff's Complaint alleges that she filed an EEOC complaint in September of 1996 and complained at work of discriminatory treatment in April and June of 2000. There is no evidence that Lt. Phillips was involved in or even knew about these complaints.

Plaintiff's Complaint also contends that she filed a complaint with the Tennessee Human Rights Commission ("THRC") in May of 2004, *after* Lt. Phillips referred her to PASS for

10

counseling and evaluation in January 2004. As stated above, Plaintiff's temporary decommissioning occurred on July 20, 2004, as a result of the recommendation of Dr. Jeffries, an independent psychologist. To establish a claim for retaliation under Title VII, Plaintiff must show that (1) she engaged in protected activity, (2) that activity was known by Defendant, (3) she thereafter was subject to an adverse employment action, and (4) there was a causal connection between her protected activity and the adverse employment action. Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724, 736 (6th Cir. 2006); Dobson v. City of Gallatin, 2006 WL 3805659 at * 7 (M.D. Tenn. Dec. 22, 2006).

Defendant argues that Plaintiff cannot show a causal connection between her protected activity and any adverse employment action. A plaintiff demonstrates a causal connection between her protected activity and the adverse employment action when she produces evidence from which one could conclude that the latter would not have occurred but for the former. Dobson at * 8. Although no one factor is dispositive in establishing a causal connection, the Sixth Circuit has found that evidence that a defendant treated a plaintiff differently from similarly situated employees or that an adverse action was taken shortly after a plaintiff's exercise of protected rights is relevant to causation. Id. (citing Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)).

Plaintiff's referral to counseling could not have been in retaliation for her complaints to the THRC or the EEOC because those complaints came *after* her referral.[5] With regard to Plaintiff's temporary decommissioning, the Court finds that the intervening evaluation and recommendation of Dr. Jeffries which resulted in Plaintiff's temporary decommissioning broke any alleged causal

---

[5] Plaintiff's complaints in 1996 and 2000 are too remote in time to have influenced the PASS referral. In addition, as noted, there is no evidence that Lt. Phillips was even aware of these past complaints.

11

connection between Plaintiff's protected activity and her decommissioning. There is no evidence that Dr. Jeffries' recommendation was in retaliation for Plaintiff's complaints. There is also no evidence that Plaintiff was treated differently from similarly situated employees who had been evaluated for duty in the same way.

Even if Plaintiff could create a genuine issue of material fact as to the causal connection, the Court finds that, for the reasons set forth above, Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reason for temporarily decommissioning her on recommendation of Dr. Jeffries was actually pretext for retaliation.[6]

For these reasons, Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims is GRANTED, and those claims are DISMISSED.

## TENNESSEE HUMAN RIGHTS ACT

Plaintiff has asserted claims under the THRA for all of the above alleged discrimination. Defendant correctly asserts, however, that Plaintiff's THRA claims are barred by the applicable one-year statute of limitations found in Tenn. Code Ann. § 28-3-104. Plaintiff has not rebutted this assertion. Plaintiff's Complaint was filed on October 21, 2005, more than one year after the alleged misconduct.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's THRA claims is GRANTED, and those claims are DISMISSED.

---

[6] The performance evaluation which Plaintiff contends supports a finding of pretext was completed on November 10, 2004, two months before Lt. Phillips referred Plaintiff for counseling. Docket No. 37, ¶ 30.

12

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 25) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE